UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK MORRIS WALDROUP,

    Plaintiff,

v.

UNKNOWN FARBER,
UNKNOWN LEMAIRE, and
UNKNOWN DIAL,

    Defendants.

    Case No. 1:22-cv-175

    Hon. Jane M. Beckering

_____/

## REPORT AND RECOMMENDATION

Plaintiff Frederick Morris Waldroup ("plaintiff" or "Waldroup") is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). Waldroup filed this prisoner civil rights lawsuit pursuant to 42 U.S.C. § 1983 against Corrections Officer (CO) Farber, Sgt. Lemaire, and CO Dial. The Court dismissed plaintiff's claims against defendants Sgt. Lemaire and CO Dial. *See* Order (ECF No. 9). This matter is now before the Court on defendant CO Farber's motion for summary judgment (ECF No. 38).

    **I.**    **Plaintiff's allegations**

Plaintiff alleged that CO Farber violated his Eighth Amendment rights. The Court summarized his claim against CO Farber in relevant part as follows:

> Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. . .
>
> Plaintiff alleges that on December 2, 2021, he returned to LRF after a hospital stay following a suicide attempt. (ECF No. 1, PageID.3.) Plaintiff avers

1

> that Defendant Farber "abandoned" his post to come to segregation to strip Plaintiff out for suicide watch. (*Id*.) Once Plaintiff was nude, Defendant Farber walked "within inches" of him and stated, "Since you took all those pills I bet you can take this d***." (*Id*.) Defendant Farber then "smacked [Plaintiff] on [his] butt cheek." (*Id*.) Plaintiff alleges that Defendant Farber had him "backed into the wall." (*Id*.) Plaintiff was "in fear of being sexually [assaulted] further so [he] asked [Defendant Farber] to stop touching [him]." (*Id*.)
>
> Plaintiff subsequently alleges that this incident became public knowledge. (*Id*.) He claims that on January 28, 2022, Defendant Farber issued a misconduct indicating that Plaintiff stated, "There's my baby, what's up sexy." (*Id*.) According to Plaintiff, the misconduct was meant "to degrade [him] and have other prisoners believe [he] was homosexual so they would harass [him]." (*Id*.)

Opinion (ECF No. 8, PageID.24-25). Plaintiff did not specify the relief he seeks. *Id*. at PageID.26. The Court construed plaintiff's complaint as alleging an Eighth Amendment claim against CO Farber. *Id*. at PageID.36.

## II. CO Farber's motion for summary judgment

### A. Legal standard

CO Farber has moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

2

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Plaintiff's Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson*, 503 U.S. at 8.

3

To demonstrate the objective component, the plaintiff must demonstrate that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

On initial screening, the Court evaluated plaintiff's claim as follows:

> Plaintiff contends that Defendant Farber violated his Eighth Amendment rights by sexually assaulting him. (ECF No. 1, PageID.3.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).
>
> "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848-49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However,

> in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See, e.g., Ivey*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).
>
> Moreover, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards), *abrogated in part on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).
>
> Here, Plaintiff alleges that Defendant Farber "abandoned the post he was working at to come to [segregation] to strip [Plaintiff] out for suicide watch." (*Id.*) He avers that Defendant Farber made a sexually suggestive comment and smacked him on his "butt cheek." (*Id.*) Plaintiff also contends that Defendant Farber had him "backed into the wall." (*Id.*) At this stage of the proceedings, the Court concludes that Plaintiff has sufficiently set forth an Eighth Amendment claim against Defendant Farber.

Opinion at PageID.27-29.

CO Farber contends that plaintiff's complaint did not allege an Eighth Amendment violation stating,

> Waldroup claims that CO Farber sexually assaulted him during a strip search. (ECF No. 1, PageID.3.) CO Farber denies these allegations. (Def.'s Ex. A, Farber Decl., ¶6-7.) Even if taken as true, Waldroup's accusations do not amount to an Eighth Amendment violation.

5

Defendant Farber's Brief (ECF No. 39, PageID.113). Contrary to CO Farber's contention, the Court has already concluded that plaintiff's complaint "sufficiently set forth an Eighth Amendment claim against Defendant Farber." Opinion at PageID.29.

The issue before the Court is whether any facts arose in discovery which would change the Court's conclusion. The four operative facts in plaintiff's claim are: (1) that CO Farber "abandoned" the post so that he could strip plaintiff out for suicide watch; (2) that CO Farber "made a sexually suggestive comment"; (3) that CO Farber "smacked" plaintiff on his "butt cheek"; and (4) that during the alleged assault CO Farber had plaintiff "backed into the wall." *Id*.

By way of background, on December 1, 2021 (the day before the alleged incident) plaintiff attempted suicide three times: he swallowed some screws; he tried to electrocute himself; and he swallowed 15-20 sleeping pills. Waldroup Dep. (ECF No. 39-3, PageID.134). Prison officials took plaintiff to the hospital and he returned the next day. *Id*. at PageID.134-135. Plaintiff stated that when the van arrived back from the hospital, CO Farber was at a control booth, opened the van door, and asked for plaintiff's name and ID number. *Id*. at PageID.135. This was the first time that plaintiff had ever seen Farber. *Id*. at PageID.144.

When plaintiff got out of the van, CO Martinez and another officer escorted him, followed by Farber. *Id*. at PageID.136. The group went to healthcare where plaintiff was screened and told he was "good to go." *Id*. Next, they went to a holding room or holding cell ("room 82"). *Id*. CO Martinez and CO Farber walked plaintiff into the room. *Id*. Farber, referring to the strip search, told Martinez, "Don't worry about it. I got it." *Id*.

When asked, "did CO Farber conduct a strip search on you" plaintiff responded:

> So I got naked. I got naked. And as I'm getting naked, that's when CO Farber – I'm all the way naked. I go to do the -- basically, you got to squat and cough and all that business. I get ready to do that. All my own clothes are on the

6

> chair. I stand up, and I kind of, like, on the side, like, I'm kind of, like, my side is facing him.
>
> So and that's when he stated that, "Since you took all those pills" -- and as he was saying that, he was walking toward me. "I bet you can take all this." You know, he was referring to his penis, but he said -- he said, "I bet you can take all this dick", and before he finished the statement, that's when he slapped me on my butt cheek.

*Id*. at PageID.136-137. At that time, plaintiff was standing with CO Farber on his left side, his right side "against a wall", and "facing the open space towards the back of the room." *Id*.

Plaintiff also testified that he had been spent at total of about nine years in prison and been strip searched "[p]robably 2, 300 times," which he later reduced to "dozens and dozens" of times. *Id*. Plaintiff acknowledged that he sometimes had strip searches with one officer and that during those searches, he usually handed his clothes to the officer. *Id*. at PageID.138. Plaintiff acknowledged that he did hand his clothes to CO Farber, but Farber did not search the clothes. *Id*. Rather "[h]e just threw them on the chair." *Id*. Plaintiff stated that CO Farber struck his left butt cheek and then,

> I told him, I said, I said, "Stop touching me." And he kind of -- he kept, like, kept coming to me, and I told him, like, I'm yelling, "Stop touching me." And that's when two other COs ran into the room at the door while I was still naked.
>
> Q. Who?
>
> A. CO Dial and CO Martinez.

*Id*. Plaintiff characterized the touching as a "smack on the butt". *Id*. at PageID.140. When asked, "how hard did [CO Farber] hit it?", plaintiff responded, "He hit me hard enough for me to feel it." *Id*.

> After CO Dial and CO Martinez entered the room,
>
> CO Farber backed away from me. And let me – there was a suicide gown already in the room. And he steps away from me. Once they walk in, he steps away from me, and he lets me put the suicide gown on.

7

*Id*. at PageID.138.

>   To clarify plaintiff's claim at issue in this lawsuit, CO Farber's counsel asked him,
>
> Q. . . . Did Officer Farber, aside from that comment about take this dick and the smack on your left buttocks, did he touch you any other time during the strip search?
>
> A. Besides him having -- he was touched up on my left side with his body, with his whole body, but other than that, no.
>
> Q. Well, when was he touched up to your whole side of your body?
>
> A. Well, I told you, he was right -- when I was – right after he made that comment, he smacked me on my butt cheek, that's when he was pushed up -- like he was -- he was touching me.
>
> Q. Okay.
>
> A. So he was touching my butt.
>
> Q. Okay.
>
>   He was standing up right against you?
>
> A. Yes, sir.
>
> Q. Okay.
>
>   So I just want to make sure that we're crystal clear on this. As far as the comment about taking pills and you can take this dick, and then there was a smack on your left butt cheek, was that all that happened in this room 82 by Corrections Officer Farber? Is that -- is that what you're alleging as far as the sexual assault?
>
> A. Besides him pushing me, yes, sir.

*Id*.

>   In his declaration, Farber provided a different version of events:
>
> 3.    On December 2, 2021, I was working the yard at LRF when corrections officers brought a prisoner back from the hospital. I later identified that prisoner as Plaintiff Waldroup. After the transport van entered the prison facility, officers escorted Waldroup inside and I followed. I did not "abandon my post" to do so; I was simply assisting other officers, as is routine for me to do.

4. Once Waldroup was inside the prison facility, officers escorted him to Room 82. Room 82 is a holding/intake room for prisoners where strip searches are routinely performed. I then performed a strip search of Plaintiff Waldroup in Room 82 at LRF.

5. I performed Waldroup's strip search the same as I have performed hundreds of other strip searches during my ten-year career as a corrections officer. First, I took Waldroup's hands out of his handcuffs and took off his belly chain. Next, while standing about 3-4 feet away from him, I asked Waldroup to hand me his clothes one item at a time (shirt, pants, socks, and shoes). I went through Waldroup's clothes (felt, looked at, searched them, and shook them out). I then had Waldroup hand me his shoes. Next, I asked Waldroup to open his mouth, stick his tongue up, and I looked at his hair. I then asked him to flip back his ears and lift up his arms so I could look at his arm pits. I next asked Waldroup to turn around and show me the bottom of his feet. Last, I asked Waldroup to take underwear off, lift up his scrotum, turn around, bend at the waist, and spread his butt cheeks.

6. After the strip search, CO Martinez arrived and placed Waldroup in a protective suicide gown. COs Martinez and Dial then escorted Waldroup out of Room 82.

7. I only physically touched Waldroup when I took his handcuffs and belly chain off before the strip search. At no time did I spank Waldroup's buttocks.

8. At no time did I say to Waldroup, "Since you took all those pills I bet you can take this dick."

Farber Decl. (ECF No. 39-2, PageID.127-129).

As discussed, *supra*, plaintiff's Eighth Amendment claim is based on four operative facts alleged in his complaint.

CO Farber abandoned his post.  Plaintiff presented no evidence to support his claim that CO Farber "abandoned" his post, with the inference being that he did so for the purpose of strip searching and sexually assaulting plaintiff. In his declaration, Farber stated that he did not abandon his post. After identifying plaintiff, he assisted the officers who were escorting plaintiff back into the prison.

9

<u>CO Farber backed into the wall during the alleged assault</u>. There is no evidence that plaintiff was "backed into the wall" by CO Farber. Plaintiff testified that while in room 82, CO Farber was on his left side, a wall was on his right side, and he was facing an open space.

<u>CO Farber made a sexually suggestive comment</u>. The parties presented conflicting evidence on the alleged verbal harassment, *i.e.*, whether CO Farber "made a sexually suggestive comment" regarding his penis. Viewing the evidence in the light most favorable to plaintiff, assuming that Farber made the comment, the use of harassing or degrading language by a prison official does not rise to level of a constitutional violation. *See Johnson*, 357 F.3d at 546; *Ivey*, 832 F.2d at 954-55; *Violett*, 76 Fed. Appx. at 27.

<u>CO Farber smacked plaintiff on the butt</u>. Finally, the parties presented conflicting evidence on the physical contact, *i.e.*, whether CO Farber "smacked" plaintiff on his left "butt cheek.". Viewing this evidence in the light most favorable to plaintiff, assuming that Farber slapped plaintiff's left butt cheek and that this was a "sexual touching", such a minor, isolated incident of sexual touching, even coupled with offensive sexual remarks, does not rise to the level of an Eighth Amendment violation. *See Berryhill*, 137 F.3d at 1075; *Solomon*, 478 Fed. Appx. at 320-21; *Jackson*, 158 Fed. Appx. at 661; *Johnson*, 2000 WL 659354 at *1.

Based on this record, plaintiff has failed to establish sufficient facts to support an Eighth Amendment violation. Accordingly, the Court should grant CO Farber's motion for summary judgment.

### C. Qualified immunity

CO Farber also seeks summary judgment based on the affirmative defense of qualified immunity. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The existence of the qualified immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).

CO Farber's motion for summary judgment on the basis of qualified immunity essentially repeats his argument that plaintiff has no constitutional claim, *i.e.*, "because Waldroup cannot prove the objective and subjective components, there is no Eighth Amendment violation and CO Farber is entitled to dismissal of the claims against him."  Because CO Farber did not violate a constitutional right, he is entitled to qualified immunity.  *See Brown*, 814 F.3d at 457.  Accordingly, the Court should grant CO Farber's motion for summary judgment on that basis.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendant CO Farber's motion for summary judgment (ECF No. 38) be **GRANTED** and that this action be **terminated**.

Dated:  April 22, 2024                                      /s/ Ray Kent
                                                            RAY KENT
                                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).